Good morning. Good morning. May it please the Court, my name is Megan Moriarty and I'm here on behalf of the Petitioner Appellant, Stephen Bryant. At this time I think I would like to reserve three minutes for rebuttal. Three? Three. All right, we'll try. We might use all your time. Okay. This is a habeas matter and the issue presented is whether the lack of legal resources at the Arizona Department of Corrections can constitute grounds for equitable or statutory tolling. Maybe you can get right to the point here. Why wasn't access to the statute itself sufficient? Why wasn't access to the statute itself? Without the statute itself, Mr. Bryant still did not have access to case law which would interpret the statute of limitations for him, especially being that this is a pre-1996 conviction. He would not have been able to interpret it and apply it to his case. He did not know how to properly exhaust his claims. He had no access of preclusion. You have to understand what you're asking here is, you know, that when you ask for something like this, you've got to tell us how you're going to cabin this. Because that, you know, it says the one-year statute of limitation right in there. And to give access to case law, to give explanations of retroactivity, the suspension clause, all of those things which we hardly understand, you know, I mean, why wouldn't someone just look at this and say, okay, it says a one-year statute of limitations. I'm on notice on this and I've got to diligently pursue it. You know, I mean, what's the limit on the case law that you want to provide? I mean, why don't we just give everyone a lawyer and tell them how to apply the statute of limitations here? I know that would be a nice solution, but I don't think we're going to get that today. Well, especially in this case, the evidence has shown that the statute itself really cannot even be shown to have shown up on the shelves until April of 1999. Mr. Bryant may have learned of an avenue of relief because he didn't have access to case law to establish his claims. He may have, from another prisoner, found an avenue of relief in September of 99. He then tried to pursue a Rule 32.1F proceeding in state court, thinking that that's what he needed to do to exhaust his claims, and filed that Rule 32.1F proceeding in March of 2000, which would have been within one year of the April of 1999. Had he known that he did not need to first pursue that Rule 32.1F, we can assume that he might have filed his 2254 in March of 2000. And under the dictates of Whalum Hunt v. Early, he would have been timely. I mean, that's the specific case law that he needed access to. So simply by reading the statute, he was not put on notice. That's your main argument, is that correct? Exactly. Well, our main argument is twofold. He did not have case law to tell him that the AEDPA applied to him and how it applied to his case, being that he was convicted prior to 1996. And two, he had no case law to tell him how the preclusive effect of his prior state court proceedings and whether or not he needed to pursue relief in a 32.1F motion before the Arizona Supreme Court. The arguments against your arguments are, are we going to require every prison to have extensive case law access? I think not extensive case law access, but just the permanent requirements. I think in this case, just the federal reporters and the state court reporters would have been enough to put him on notice of his claims and what he needed to do to pursue his claims in a 2254. What if in that case he said, I don't know how to access the federal reporters, I mean, I don't know how to get into them, I'm not a legally trained person, would that be a sufficient argument? Would we then say you have to not only supply the reporters, but you must supply someone to tell them how to use them? But this case is not about that question. This case is that he had absolutely no access. He might have, he's shown that, he actually does have a very good legal mind and he might have been able to have, to have interpreted the case law and applied it to his case in the best way possible. And that question just. Your argument is that access is what is required. Access to case law. All right. Just the bare minimum amount of case law. The limit on that access is what? Well, he needs to be provided a meaningful access to the courts. And that would have just been the bare minimum to allow him to interpret and apply the procedural hurdles to file his 2254. All right. Thank you. I think regarding diligence, because I think that's probably the most on the court's mind, is I would like to discuss Mr. Bryant's diligence. Because this is a 1988 conviction. To do so, I think it's important to understand his three claims and his continued and persistent way he tried to assert those claims before the state courts. Essentially, Mr. Bryant has made, consistently made three claims. One is that his trial attorney operated under an actual conflict of interest and that that trial attorney was also representing the state's key witness, which was a jailhouse informant. Two, there was insufficient facts to support his Alford plea. And three, he then received ineffective assistance of appellate counsel. When appellate counsel failed to raise those claims on appeal, instead filed an Anders brief without Mr. Bryant's permission, failed to tell Mr. Bryant that he had the right to file a pro se supplemental brief, and then did not even tell Mr. Bryant that he did that until after Mr. Bryant's appeal had been affirmed. Mr. Bryant continuously tried to pro se, tried to assert those claims in the state supreme court three times, first in a PCR, then in a motion to withdraw his plea, and also in what he titled a petition for review rehearing. Each time, the state court appointed that same appellate attorney, the same one that was operating under an ineffective assistance of counsel claim. Mr. Bryant tried to have that counsel removed. His pleas were ignored, and the state court would just summarily deny his claim. Mr. Bryant then came in a fourth time in 1994, and again tried to assert his three claims. This time pleaded, just do not assign me any counsel, because I do not want John Williams to represent me. And the state court then just the response was that his claims were now precluded, and the state court just summarily denied his claim. This was in April of 1994, and then it's at this time that we're saying that the Arizona Department of Corrections law libraries and its inadequacies prevented him from finding out how his claims were precluded, what he needed to do to exhaust his claims, later that the statute was ever even enacted, and then fourth, how the statute even applied to his claims. How the statute of limitations would apply to his case. He had no chance, and he did what he had to do, based on the information he gathered from another prisoner, that he had an avenue of relief, but first he had to file a 32.1F proceeding. He had no way of determining that he didn't have access, he didn't have a right to a 32.1F proceeding, and he should have instead immediately filed a 2254. And because of that, he then filed his 2254, and he now finds out that he was barred. Do you want to reserve two minutes? Yes, I would. Thank you very much. Good morning. May it please the Court. My name is Robert Walsh. I'm appearing on behalf of the Respondents in this case. I'm an assistant attorney general from Arizona. Good morning. I'd like to address a question. Go right to the heart of the question here for me. Can you point to language in the statute that shows that the limitations period applies to persons with convictions prior to enactment and the period of time they have to file the claim? Where in the statute is that? It's stated specifically. The statute does not specifically deal with prisoners whose convictions became final before April 24th, 1996. All right. In the absence of such language, how is Mr. Bryant to know that the AEDPA limitations period applied to him? Okay. Well, the first thing we have to look at is that Mr. Bryant didn't even know about the statute of limitations until the State filed its answers. So to a certain extent, this is a legal argument in search of a factual predicate. And that's detrimental to their claim because even assuming there's a deficiency with the case law not being in the library after August 4th of 1997, even assuming that, there needs to be a causal nexus for there to be either statutory tolling or equitable tolling and a future act. Basically, Mr. Bryant never even endeavored to research this particular question, so it can't even constitute cause. But to answer your question, no prisoner whose conviction became final before the AEDPA took effect knew what to do. But they all nonetheless still are able to file their habeas petitions and have it considered by the court. And as a result, this court, as well as every other court in the country, has held that there would be a year. Now, I cited Shannon v. Newland and Minter v. Beck in a footnote in my opening brief for the proposition that the mere fact that something might be futile doesn't constitute an impediment. So Bryant could have, let's assume that he sat down and said, gosh, I see the statute here, my conviction became final in 1989, I guess I'm out of luck. He still could have filed the habeas petition and asked the court to give him a break, which is essentially what other prisoners did. And in some of the cases that I cited, I believe at Lopez and Keene, a Second Circuit case and I think a Tenth Circuit case, they were pro-perpetitioners who made those arguments. So the mere fact that he wouldn't be successful in his own mind wouldn't have prevented him from making the claim to the court and allowing them to decide it. But what relevance is it that other petitioners and other prisoners seem to figure it out? Well, they all labored under, during, they all had a period of time during which there was no case law that determined how the statute applied to people whose convictions became final before 1996. And we're also talking about a petitioner who didn't even realize that there was a statute of limitations until August of 2001. So we're basically talking about a theoretical exercise, and in Lewis v. Casey, the Supreme Court says it's not just some theoretical deficiency, but we have to show actual injury. And here, when the defendant has a statute of limitations, he knows, you know, whereas before I had all day, forever and a day to file this, now I have only a year. And he very easily could have filed this, but as I pointed out in my brief, he had no idea that there was even a statute of limitations, so he never needed case law because he didn't know he had an issue to research. And yet you just said there was no language in the statute that the limitations period applied to people like him. There's nothing, even if he had had access to the statute. Right. But even assuming so, this particular petitioner is not entitled to relief because he needs to show that that's the cause for him being untimely. And how could he possibly have – how could he possibly say DOC didn't have a library with case law? That caused me to not know that I could have filed a habeas petition when he didn't even know about the AEDPA until the State answered his petition. So is it your position that it puts him – that the statute of limitations puts people on notice to do something or get more information? Right. In his case, he did nothing, so he's not entitled to then say – I mean, there's – you know, he didn't know about anything. He didn't do anything. Right. And he had access to something that would have said one year. Right. And nothing in the Department of Corrections policy prohibited him from being able to, you know, consult outside sources. In fact, he was even able to get a book that had the statute of limitations, and he had it in his own possession. And yet he didn't file anything. The real reason, Judge, that he didn't comply with the statute of limitations was because he didn't act with due diligence. Now, counsel just argued that he exercised due diligence because he filed PCRs in state court. But that was all, like, in 1994. And he has to exercise diligence during the time period he seeks to toll. And that hasn't happened. We're talking about April 24th, 1996 on. And this petitioner had nothing pending in any court from – I think it was October of 1994 that the Arizona Supreme Court denied his motion for reconsideration of its denial of his motion to recall the mandate. He didn't have anything pending in any court, you know, for quite some time. I mean, we're talking about a five-and-a-half-year period. And even after the Arizona Supreme Court denied the motion to recall the mandate, for four months he sat and did nothing, and all he had to do was just resubmit the same claims he had litigated before. And by the way, not once did he – he had three PCRs, petitions for post-conviction relief that were filed in the trial court. Not once did he petition for review to the Arizona Court of Appeals. How is that due diligence, even if we want to assume 1994 is relevant to the statute of limitations equitable tolling question here? Basically what we're dealing with is the defendant arguing in retrospect that he needed a library to answer two questions. What would be the effect of the statute of limitations on me since I was convicted and my conviction became final in 1989? And what would be the effect of the motion to recall a mandate? Now, counsel just argued that the motion to recall a mandate was important to him because he allegedly had the AEDPA in mind or he wanted to exhaust his federal claims. That's not what he said in his pleadings. What he was saying was I ran into an inmate who had the same lawyer and was able to recall the mandate. His idea was to make sure he could relitigate the claims in state court. He wasn't even thinking about the AEDPA because according to his own statements to Judge Duncan during the evidentiary hearing, he didn't even know the statute of limitations even existed until 2001. He might not have even known that there was such a creature as a habeas. So in essence, Your Honor, the fact that the AEDPA's text was available to him and he had paralegals who could have directed him to it. What did the records show about that paralegal access to him or her to get information to the prisoners? The testimony would be through Darrell Johnson, who is the legal access monitor. And he was the one who testified that there were three paralegals that were available to the inmates. And there is no evidence that he ever asked for paralegal assistance. So basically it's something that he could have asked anyone at the Department of Corrections, the librarians. I mean, there's nothing there. I mean, he indicated that he, you know, there's nothing in the record indicating that he sought this type of assistance. I do want to talk about one other thing. I do take issue with counsel arguing that the statute of limitations wasn't available to him until April of 1999. I was the counsel who introduced the evidence at the hearing. And Magistrate Judge Duncan did find that the case law was available to this particular petitioner until August of 1997. I submitted testimony of the two Department of Corrections administrators who are in Unit Libraries for the facility that Mr. Bryant was living. And they were continuing to order the federal reporters, the Supreme Court reporters, the USCA. And I also had West Group testify that they were sending the USCA, the pocket parts, and the Supreme Court and federal reporters. And basically what happened was, I mean, all this evidence came in. The only evidence that it wasn't there, I want to ask you to take a look at the page 31, I think it's SER 44, page 44. Magistrate Judge Duncan asked the petitioner, you know, basically, were the books there in the library? And he said if he knew where to look, they probably were. That's the only evidence that he did not have, that the libraries did not provide him with case law. That's it. And the petitioner tries to buttress that by citing cases like Gluth, Hook, and Casey, to basically say, well, DOC didn't comply with the orders of the court previously, so you must assume, almost like in a 404, Rule 404 situation, if they didn't comply before, they didn't do it again. Well, that's not confident evidence, and it dealt with different types of violations. And the witnesses I called, I asked them, I asked Dr. Griffiths, and I asked Ron Brugman, I said, were you ever held in contempt for not having the legal books that you needed to have in the library? And their answer was no. There's nothing in the record to indicate that those books weren't there. So in essence, I want to ask the Court to take a look at the evidence that was available that indicated that these materials were present until August of 1997. His statute of limitations expired in April of 1997. So there can be no ñ I mean, once it's over, once the statute of limitations is over, any impediment that comes afterwards doesn't matter. I see my time is up. So, I mean, basically, he's got to show that the prison legal system was an impediment to filing a timely petition. And you're saying that he didn't, based on that evidence. On that evidence, and also on the fact that he had the AEDPA available to him, and he could have filed it. He could have said, oh, my gosh, I have one year, I might as well file now, get it in, and let the Court resolve that question. And that's all Casey requires, is that he has an opportunity to present his claims. Thank you very much. All right, thank you for your argument. Why don't you respond to counsel's, for the appellee's argument that he says the prison legal system was not an impediment to his filing a timely petition, and you've got to be able to show that. How did you show that here? Well, I don't quite understand the question. Are you referring to the magistrate's finding that there was statute? There is evidence in the record of all of those documents being available. There is evidence in the record that your client didn't even know about the statute of limitations, despite the fact that there were documents present that said that. Although the magistrate made certain findings based on documents that the magistrate found was in the library, the district court, however, did not accept, modify, or reject those findings pursuant to 636B or Rule 8B of the Rules of Governing Habeas Petitions. Therefore, there were no findings. And I invite the court to actually look at all of this evidence de novo, and you will see that the evidence, we're not just playing with the record. There is no evidence that these documents are truncated. Well, the district court did make some findings. The district court did reject Bryant's equitable tolling argument for lack of due diligence, correct? Correct. The district court reasoned that he had reasonably adequate opportunity to file the petition. That is correct. The district court didn't adopt everything the magistrate judge said, but the district court did make certain findings. But he did not adopt. He assumed without deciding that the statute first appeared in the library in April of 99. There was no adoption or modification that the statute appeared any earlier than that. Therefore, there are no findings. And with a de novo look at the evidence before this court, I think, and I'm going to refer to my reply brief, there is no evidence that these statutes, although received in the warehouse,  especially considering Mr. Bryant's testimony, that the entire law library for a period of a year or two was all contained in one cardboard box. And so, therefore, he has shown that it was an impediment, whether he needed case law to tell him that there was a statute first or a statute to tell him there was case law first. He did not have enough to find and tell him. I ask that any of the court members have additional questions. You have used your time. Did anyone have additional questions? All right. Thank you for your argument. This matter will now stand submitted.
judges: Goodwin, D.W. Nelson, Callahan